**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| EDGARDO L. VERA-LÓPEZ, | |
| **Plaintiff,** | |
| v. | **CIVIL NO. 23-1168 (RAM)** |
| COMMONWEALTH OF PUERTO RICO, represented by HON. DOMINGO EMANUELLI; its agency FORENSIC SCIENCE BUREAU; DR. MARIA CONTE; WANDA CANDELARIA-AROCHO; MÓNICA MENÉNDEZ; BRENDA FORTY; DR. BEATRIZ ZAYAS; HÉCTOR FIGUEROA; JOHN DOE; DR. CARLOS CHÁVEZ; RICHARD ROE; and their respective insurance companies, | |
| **Defendants.** | |

<u>**OPINION AND ORDER**</u>

RAÚL M. ARIAS-MARXUACH, United States District Judge

    Pending before the Court is the *Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)* ("*Motion to Dismiss*") at Docket No. 21 filed by Defendants Commonwealth of Puerto Rico (the "Commonwealth") and the Forensic Science Institute of Puerto Rico ("FSI") (collectively, the "Appearing Defendants"). For the reasons discussed below, the Court **GRANTS** the *Motion to Dismiss*.

## I.    BACKGROUND

    On September 14, 2023, Plaintiff Edgardo L. Vera-López ("Plaintiff" or "Mr. Vera-López") filed his *Amended Complaint* against the Commonwealth and the FSI, as well as some of their representatives and employees (collectively, "Defendants").

(Docket No. 18).[1] He alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 42 U.S.C. §§ 1983 and 1985; 5 U.S.C. § 2302(b)(8)-(9); Title II of the Americans with Disabilities Act ("ADA"); the Due Process Clause, and Articles 1802 and 1803 of the Puerto Rico Civil Code.[2] Id. ¶¶ 3-5, 48-54. In his *Response*, he also explicitly invokes Law 115. (Docket No. 49 ¶¶ 41-43). Plaintiff seeks monetary damages but does not request an injunction. (Docket No. 18 ¶¶ 48-54).

Per the *Amended Complaint*, Plaintiff began working as a Forensic Science Investigator for the FSI in 2007. (Docket No. 18 ¶¶ 18-19). Approximately ten years into his tenure, on April 6, 2017, Mr. Vera-López noticed and reported a breach in chain-of-custody and evidence release procedures by a security officer. Id. ¶¶ 21-21(e). The report was made to co-defendant Wanda Candelaria-Arocho ("Ms. Candelaria"), the Director of Forensic Investigators and one of the co-defendants in this case. Id. ¶ 21(e). According to Plaintiff, the security officer was a close friend of Ms.

---

[1] Plaintiff filed a *Second Amended Complaint* on December 22, 2023, but leave to file it was not granted. (Docket Nos. 25 and 46). Thus, the operative complaint for the purposes of the *Motion to Dismiss* and this action is the first *Amended Complaint*.

[2] The parties refer to these claims as falling under Articles 1802 and 1803. However, the Puerto Rico Civil Code was amended in 2020, and the relevant provisions are now titled Articles 1536 and 1538, respectively. *See* González-Ortíz v. Puerto Rico Aqueduct & Sewer Auth., 2024 WL 3759659, at *10 (D.P.R. 2024). For ease of reference, the Court relies on the nomenclature used by the parties in this Opinion and Order.

Candelaria, who questioned Mr. Vera-López' integrity, berated him in front of his supervisor, and attempted to hit him with her fist. Id. ¶¶ 21(e)-22(b).

Later, Plaintiff was a key witness who testified about the mismanagement of cadavers by the FSI after Hurricane María. Id. ¶ 23. Co-defendant Mónica Menéndez ("Ms. Menéndez"), the Deputy Director of the FSI, then fired Plaintiff. Id. ¶ 24. Additionally, her special aide, co-defendant Héctor Figueroa ordered that a criminal investigation against Mr. Vera-López be initiated. Id. ¶ 25. The Plaintiff was referred to the Puerto Rico Justice Department in February 2019 "for criminal investigations [and] prosecution." Id. ¶ 25(a). Mr. Vera-López then testified in criminal investigations before the Puerto Rico Department of Justice and in a legislative inquiry before the Puerto Rico House of Representatives. Id. ¶ 26.

According to Plaintiff, the leadership of the FSI changed and his prior dismissal was reversed without explanation. Id. ¶ 27. Mr. Vera-López alleges that co-defendant Dr. German Carlos Chavez ("Dr. Chávez")[3], the FSI Director, ordered a second "criminal investigation" against Plaintiff. Id. ¶ 28. The leadership of the FSI changed again, and subsequent FSI Director Dr. Beatriz Zayas

---

[3] Dr. Chávez was added as a party on December 22, 2023.

("Dr. Zayas") began to defame Plaintiff. Id. ¶¶ 30, 32.
Specifically, Dr. Zayas purportedly wrote press releases and
participated in a radio program in which she said that Plaintiff
disclosed confidential information for political purposes. Id. ¶
32(a). Shortly after, the Governor of Puerto Rico dismissed Dr.
Zayas from her position as Director. Id. ¶ 33. Finally, Mr. Vera-
López also claims that he "was not authorized sick leave and even
questioned once when he provided medical evidence of his medical
condition." Id. ¶ 34.

Plaintiff filed a complaint before the Equal Employment
Opportunity Commission ("EEOC") on August 1, 2019 and received a
notice of the right to sue on January 23, 2020. Id. ¶ 36. He then
filed a Complaint in this district on April 22, 2020, Vera-López
v. Commonwealth of Puerto Rico et al., Civil No. 20-cv-1186 (PAD).
Id. ¶ 37. Mr. Vera-López voluntarily dismissed that case and
judgment was entered on April 11, 2022. Id.

Mr. Vera-López stated he "was harassed and discriminated
[against] due to his medical condition [i]n May and June 2020."
Id. ¶ 39(a). He was required to attend a psychological evaluation
near the end of June 2020, and the last psychological evaluation
he was required to undergo occurred in January 2022. Id. Plaintiff
also alleges he was suspended for the second time in 2022 due to
a presumed disability. Id. ¶ 40. He further claims that the

Defendants erroneously alleged that he was a law enforcement agent, rather than a scientist. Id. ¶¶ 39, 40-41.[4]

On April 25, 2022, shortly after he voluntarily dismissed his civil case, Plaintiff was told that he had to leave work immediately. Id. ¶ 42. However, he was told that he was not suspended, fired, or dismissed; additionally, his salary was not being suspended. Id. Around January 30, 2023, a prosecutor with Puerto Rico's Department of Justice contacted FSI to subpoena Plaintiff as an expert witness in an unrelated pending criminal case. Id. ¶ 43. The prosecutor was informed that Mr. Vera-López had been suspended. Id. Ultimately, Plaintiff did testify in the criminal case as an expert witness. Id. ¶ 47(a).

On December 2, 2023, the Appearing Defendants filed their *Motion to Dismiss*. (Docket No. 21). They contend the following: (1) the Eleventh Amendment bars Plaintiff's monetary claims; (2) Plaintiff failed to establish a valid claim of malicious

---

[4] In his *Response*, Plaintiff attached an exhibit that clarified these paragraphs in the *Amended Complaint*. *See* (Docket No. 49-3). The exhibit is a letter that notes Mr. Vera-López had been disarmed for several years, which Defendants claimed was a violation of the minimum requirements of his position. Id. at 1. Although Defendants attempted to require Plaintiff to undergo a psychological evaluation so he could be rearmed, he refused. Id. Thus, they presumed he was impaired and discharged him from his position. Id. at 2. The letter, however, is dated December 13, 2023, nearly three months after the *Amended Complaint* was filed. Because the Appearing Defendants did not contest the authenticity of the exhibit, it is central to Plaintiff's ADA claim, and aspects of the exhibit are alluded to in *Amended Complaint*, the Court nevertheless considers the exhibit without converting the *Motion to Dismiss* into a motion for summary judgment. *See* Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (delineating exceptions for the consideration of extrinsic documents).

Civil No. 23-1168 (RAM)                                                      6

persecution; (3) Plaintiff did not state a claim under Title II of the ADA; (4) there is no cognizable property interest to sustain a Due Process Clause claim; (5) the Title VII claim is inadequately stated and lacks a sufficient legal basis; (6) the defamation claim is unsubstantiated and fails to establish a valid cause of action; (7) Plaintiff failed to properly invoke a valid state law against retaliation; (8) Plaintiff's Article 1802 and 1803 claims are insufficiently stated and lack legal merit; and (9) the Court should decline to exercise supplemental jurisdiction if it dismisses the federal claims. Id. at 2.

Plaintiff filed a *Response in Opposition* ("*Response*") on February 1, 2024, disputing the Appearing Defendants' arguments. (Docket No. 49). Further, he indicated that he also alleged claims pursuant to Law 115, Puerto Rico's whistleblower statute, in the *Amended Complaint*. Id. ¶¶ 41-43. However, Mr. Vera-López conceded that he lacked enough evidence to establish a malicious prosecution claim. Id. ¶¶ 16, 22. Additionally, he agreed that the Court should decline to exercise supplemental jurisdiction and dismiss the state law claims without prejudice if it granted the *Motion to Dismiss* as to the federal law claims. Id. ¶ 37.

On April 5, 2024, the Commonwealth and FSI filed a *Reply*. (Docket No. 56). In addition to reiterating their Eleventh Amendment and ADA disability arguments, the Appearing Defendants

contended that Title II of the ADA does not allow employment discrimination claims, that Plaintiff's Title VII claims are time-barred, and that Mr. Vera-López failed to exhaust administrative remedies. Id.

## II.  LEGAL STANDARD

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that "fails to state a claim upon which relief can be granted." Under Rule 12(b)(6), a plaintiff must plead enough facts to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level, […] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations marks, citations and footnote omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Further, a complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). To determine whether a complaint has stated a plausible, non-speculative claim for relief, courts must treat non-conclusory factual allegations as true. See Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20

(D.P.R. 2013). The Court takes "the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor," to determine "if they plausibly narrate a claim for relief." <u>Schatz v. Republican State Leadership Comm.</u>, 669 F.3d 50, 55 (1st Cir. 2012).

### III. DISCUSSION

**A. Malicious Prosecution Claims**

Plaintiff claims that the Defendants maliciously prosecuted him by, *inter alia*, initiating criminal charges and committing torts against him in violation of Title VII; 42 U.S.C. §§ 1983 and 1985; "other state and federal laws," and Articles 1802 and 1803 of Puerto Rico's Civil Code. (Docket No. 18 ¶¶ 3, 5). Per his *Response*, however, Mr. Vera-López "concedes that [he] lacks enough evidence to establish Malicious Prosecution claim[s]." (Docket No. 49 ¶ 5). Accordingly, any such claims are **DISMISSED WITH PREJUDICE** against all the Defendants.

**B. The Eleventh Amendment**

The Eleventh Amendment provides states are immune from suit by private individuals in federal court without the state's consent. <u>Toledo v. Sanchez</u>, 454 F.3d 24, 31 (1st Cir. 2006) (citing <u>Bd. of Trs. of the Univ. of Ala. v. Garrett</u>, 351 U.S. 356, 363 (2001)). Pursuant to First Circuit precedent, the Commonwealth of Puerto Rico is a state for Eleventh Amendment immunity purposes.

*See, e.g.*, Centro de Periodismo Investigativo, Inc. v. Fin. Oversight & Mgmt. Bd. for Puerto Rico, 35 F.4th 1, 14 (1st Cir.), *rev'd and remanded on other grounds*, 598 U.S. 339 (2023) (collecting cases).[5] The Eleventh Amendment also extends to arms or alter egos of the states. Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R., 818 F.2d 1034, 1036 (1st Cir. 1987). The FSI, an arm of the Commonwealth of Puerto Rico, may therefore also claim sovereign immunity. *See* Reyes-Berrios v. Conte-Miller, 2011 WL 903978, at *3 (D.P.R. 2011). Finally, state officials acting in their official capacity are also shielded by the Eleventh Amendment in actions for monetary damages. Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003) (citing Rosie D. v. Swift, 310 F.3d 230, 234 (1st Cir. 2002)). State sovereign immunity does not, however, protect state officers from suits against them in their personal capacity. *See* Kentucky v. Graham, 473 U.S. 159, 166 (1985).

There are "two general exceptions" to the reach of the Eleventh Amendment's grant of state sovereign immunity: first, "Congress may abrogate a State's sovereign immunity by expressly

---

[5] However, it appears that at least one Supreme Court justice would hold otherwise. *See* Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc., 598 U.S. 339, 354 (2023) (Thomas, J., dissenting) (contemplating the difficulty of seeing "how the same inherent sovereignty that the States enjoy in federal court would apply to Puerto Rico" in a case where the majority assumed without deciding that the Commonwealth was immune from suit in federal district court); *see also* Maysonet-Robles v. Cabrero, 323 F.3d 43, 53-54 (1st Cir. 2003) (discussing Puerto Rico's sovereign immunity).

authorizing such a suit pursuant to a valid exercise of power" and second, "a State may waive its sovereign immunity by consenting to be sued in federal court." Maysonet-Robles v. Cabrero, 323 F.3d 43, 49 (1st Cir. 2003) (citations omitted).

Regarding the first exception, Congress may eliminate state sovereign immunity under certain conditions. *See* Toledo, 454 F.3d at 31. For example, the parties agree that there is no sovereign immunity for a state under Title VII. *See* (Docket Nos. 49 at 5 and 56 at 3); *see also* Fitzpatrick v. Bitzer, 427 U.S. 445 (1976) (holding that the express authorization of damages actions in Title VII abrogates states' Eleventh Amendment protection). Moreover, Congress "validly abrogate[d] states' sovereign immunity to certain constitutionally-based claims under Title II of the ADA, on an as-applied basis." Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 5 (1st Cir. 2004) (citing Tennessee v. Lane, 541 U.S. 509, 533-34 (2004)). *But see* Santiago-Rodríguez v. Puerto Rico, 546 F. Supp. 3d 155, 160 (D.P.R. 2021) (classifying employment discrimination claims under Title I of the ADA, for which sovereign immunity was not nullified by Congress, and barring recovery of monetary damages by plaintiff); Medina-Medina v. Puerto Rico, 769 F. Supp. 2d 77, 80-81 (D.P.R. 2011) (same). Because sovereign immunity is abrogated as to the Civil Rights Act claims and may be

abrogated as to the ADA claims, the Court addresses those causes of action separately *infra*.

By contrast, no such abrogation exists as to either the section 1983 or the Puerto Rico law claims. *See* Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) ("[N]either a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action"); Diaz-Fonseca v. Puerto Rico, 451 F.3d 13, 33 (1st Cir. 2006) ("Neither Section 1802 or 1803 contains an explicit waiver of the Commonwealth's sovereign immunity"); Pizarro-Correa v. Puerto Rico Internal Revenue Dep't, 267 F. Supp. 3d 369, 376 (D.P.R. 2017) (citing cases and noting that "various judges within this district have held on numerous occasions that sovereign immunity shields the Commonwealth and its instrumentalities from . . . Law 115 claims in federal court"). Mr. Vera-López presents no argument to the contrary.

As to the second exception, Defendants claim and Plaintiff does not contest that the Commonwealth has not consented to suit in federal court. *See also* Diaz-Fonseca, 451 F.3d at 33 (noting that Puerto Rico Law 104 abrogates the Commonwealth's immunity only with respect to negligence suits filed in Puerto Rico's Court of the First Instance). Nor is there any suggestion that the Commonwealth has waived its immunity through affirmative

litigation conduct. *See, e.g.*, <u>Maysonet-Robles</u>, 323 F.3d at 52 (discussing actions that could be characterized as such conduct).

Accordingly, the Eleventh Amendment requires dismissal of the section 1983, Article 1802, Article 1803, and Law 115 claims against the Defendants in their official capacities. As to these claims, the *Motion to Dismiss* is therefore **GRANTED.**

### C. ADA Claims

In his *Amended Complaint*, Plaintiff brought an employment discrimination claim under Title II of the ADA. *See* (Docket No. 18 ¶ 4). However, in his *Response*, Mr. Vera-López relies primarily on <u>Román-Oliveras v. Puerto Rico Elec. Power Auth.</u>, 655 F.3d 43 (1st Cir. 2011), a case regarding liability under Title I of the ADA. *See* (Docket No. 49 ¶¶ 27-28). Title I has the heading "Employment" and prohibits discrimination "in regard to job application procedures, the hiring, advancement, or **discharge of employees**, **employee compensation**, job training, and **other terms, conditions and privileges of employment**." 42 U.S.C. § 12112(a) (emphasis added). By contrast, Title II has the heading "Public Services" and prohibits discrimination vis-à-vis the receiving "the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The Court first notes that the "law in this circuit remains unclear as to whether Title II of the ADA even applies to claims

of employment discrimination." Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 17 (1st Cir. 2006) (citing Currie v. Grp. Ins. Comm'n, 290 F.3d 1, 6 (1st Cir. 2002)); *see also* Garrett, 531 U.S. at 360 n.1 (recognizing circuit split regarding the issue); Torres-Alamo v. Puerto Rico, 502 F.3d 20, 24 (1st Cir. 2007) (interpreting unspecific ADA claim against the Commonwealth of Puerto Rico and its agencies as having been raised under Title I).

However, in the District of Puerto Rico, courts have "repeatedly held that [employment discrimination] claims are within the exclusive province of Title I of the ADA." Sanchez-Arroyo v. Dep't of Educ. of P.R., 842 F. Supp. 2d 416, 432-33 (D.P.R. 2012) (collecting cases). This view is bolstered by authority from other circuits. *See, e.g.*, Taylor v. City of Shreveport, 798 F.3d 276, 282 (5th Cir. 2015); Reyazuddin v. Montgomery Cty., Md., 789 F.3d 407, 421 (4th Cir. 2015); Brumfield v. City of Chi., 735 F.3d 619, 626 (7th Cir. 2013); Mary Jo C. v. N.Y. State & Local Ret. Sys., 707 F.3d 144, 171 (2d Cir. 2013); Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla., 693 F.3d 1303, 1316 (10th Cir. 2012); Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169, 1184 (9th Cir. 1999). Moreover, two other circuits have leaned toward the view that employment discrimination claims can only fall under Title I. *See* Menkowitz v. Pottstown Mem'l Med. Ctr.*,* 154 F.3d 113, 118-19 (3d Cir.1998) (comparing Title I and

Title III, rather than Title II); <u>Parker v. Metro. Life Ins. Co.</u>, 121 F.3d 1006, 1014 (6th Cir.1997) (same). *Cf.* <u>Bledsoe v. Palm Beach Cty. Soil & Water Conserv. Dist.</u>, 133 F.3d 816, 820 (11th Cir. 1998) (holding Title II applies to employment discrimination claims).

In the case at bar, Mr. Vera-López' claims all center on events related to his employment at the FSI, such as the conditions of his employment, his suspension, and his discharge, and do not implicate the kinds of public services contemplated in Title II. Given the weight of persuasive authority within the district and from other circuits, the Court finds that his claims should properly be brought under Title I of the ADA, and not Title II.

Because Mr. Vera-López's claims should have been made pursuant to Title I of the ADA, they are barred by sovereign immunity and warrant dismissal. *See* <u>Garrett</u>, 531 U.S. at 360; <u>Torres-Alamo</u>, 502 F.3d 20 at 24. Additionally, any claims against any of the non-institutional defendants in their individual capacity would require dismissal as a matter of law. *See* <u>Roman-Oliveras</u>, 655 F.3d at 52 (holding that Title I of the ADA imposes liability on employers, not co-workers).[6] Accordingly, the *Motion*

---

[6] Title I also requires that a plaintiff first exhaust administrative remedies before filing. *See* <u>Bonilla v. Muebles J.J. Alvarez, Inc.</u>, 194 F.3d 275, 278 (1st 1999). As discussed further *infra* in section III.D, Plaintiff has not done so in this case, and his ADA claims also could be dismissed for failure to exhaust.

*to Dismiss* is granted as to Plaintiff's Title II ADA claim, which is **DISMISSED WITH PREJUDICE** as to all the Defendants.

       i.   <u>Plaintiff's retaliation claim</u>

Although not raised by Appearing Defendants in their *Motion to Dismiss*,[7] Plaintiff also sought to plead that he was retaliated against due to his making an ADA claim. *See* (Docket No. 18 ¶ 54) (noting that he was "humiliated, discriminated, harassed, persecuted after he made a claim under the provisions of ADA (first & second time)"). While it is not articulated perfectly, it appears that Mr. Vera-López' claim refers to the complaints he filed before the EEOC and in this district. *See* <u>id.</u> ¶¶ 36-37.

Title V of the ADA prohibits retaliation against "any individual because such individual has opposed any act or practice made unlawful" by the chapter. 42 U.S.C. § 12203(a). The statute provides that "the remedies and procedures that apply to Title V retaliation claims depend on which [other ADA title] is the source of the plaintiff's underlying claim." <u>Flores-Silva v. McClintock-Hernandez</u>, 827 F. Supp. 2d 64, 75 (D.P.R. 2011), *aff'd*, 710 F.3d 1 (1st Cir. 2013). Accordingly, some courts in this district have

---

[7] The Court nonetheless addresses these claims because the Appearing Defendants requested dismissal of "all claims" against them. (Docket No. 21 at 26). However, the Court notes that First Circuit precedent appears to require that a plaintiff attempt to identify the appropriate title when bringing a retaliation claim. *See* <u>Goodwin v. C.N.J., Inc.</u>, 436 F.3d 44, 51 (1st Cir. 2006) (finding that plaintiff who stated explicitly that his claims arose under Titles I and III of the ADA did not properly plead a retaliation claim under Title V).

concluded that "Title V suits that were premised on Title I of the ADA are barred by sovereign immunity." Diaz v. Dep't of Educ., 823 F. Supp. 2d 68, 74 (D.P.R. 2011) (citing Collazo-Rosado v. Univ. of Puerto Rico, 775 F. Supp. 2d 376, 386-87 (D.P.R. 2011)). Moreover, "every circuit to have addressed this issue" has concluded that "if Congress did not validly abrogate Eleventh Amendment immunity for Title I claims, then it also did not abrogate [it] for a claim under Title V alleging retaliation for a Title I claim." Stanley v. W. Michigan Univ., 105 F.4th 856, 866 (6th Cir. 2024) (citing Dupree v. Owens, 92 F.4th 999, 1007 (11th Cir. 2024); Block v. Tex. Bd. of Law Exam'rs, 952 F.3d 613, 619 (5th Cir. 2020); Demshki v. Monteith, 255 F.3d 986, 989 (9th Cir. 2001)).

To the extent that Plaintiff raises claims under Title V of the ADA, they are **DISMISSED WITH PREJUDICE.**

### D. Title VII Claims

Pursuant to Title VII of the Civil Rights Act, it is illegal "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In addition to providing a cause of action for discrimination, the statute also prohibits retaliation. Petitti v. New England Tel. & Tel. Co., 909

F.2d 28, 31 (1st Cir. 1990). Title VII's anti-retaliation provision
provides that an employer may not discriminate against an employee
who "has opposed any practice made an unlawful employment practice
by this subchapter, or because he has made a charge, testified,
assisted, or participated in any manner in an investigation,
proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-
3(a).

     As a preliminary matter, the First Circuit has clearly stated
that "there is no individual employee liability under Title VII."
Fantini v. Salem State Coll, 557 F.3d 22, 30 (1st Cir. 2009)
(citing cases). Accordingly, any claims discussed in this section
refer to the Appearing Defendants and the individual defendants in
their official capacities.

> i.   Plaintiff failed to exhaust administrative remedies
>       for claims that postdate August 1, 2019

     "A plaintiff must exhaust his administrative remedies,
including EEOC procedures, before proceeding under Title VII in
federal court." Frederique-Alexandre v. Dep't of Nat. & Env't Res.
Puerto Rico, 478 F.3d 433, 440 (1st Cir. 2007) (citing Lebrón-Ríos
v. U.S. Marshal Servs., 341 F.3d 7, 13 (1st Cir. 2003)).
Specifically, a plaintiff must first file an administrative charge
with EEOC within either 180 or 300 days after the alleged Title
VII violation occurred. Frederique-Alexandre, 478 F.3d at 437. In

Puerto Rico, a deferral jurisdiction, the charge must be filed within 300 days. Id. This timeliness requirement is "mandatory." Id. (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002)).

After filing the administrative charge, a plaintiff may bring suit in federal court "only if the EEOC dismisses the administrative charge, or if it does not bring civil suit or enter into a conciliation agreement within 180 days of the filing of the administrative charge." Franceschi v. U.S. Dep't of Veterans Affs., 514 F.3d 81, 85 (1st Cir. 2008) (citing 42 U.S.C. § 2000e-5(f)(1)). The employee must wait for a right-to-sue letter from the EEOC, after which he will have 90 days to commence suit in federal court. Id. (citations omitted).

Here, Plaintiff alleges he filed a complaint before the EEOC on August 1, 2019, and received a right-to-sue letter on January 23, 2020. (Docket No. 18 ¶ 36). The ultimate alleged occurrence of discrimination in the *Amended Complaint* occurred on April 25, 2022, id. ¶ 42, and Mr. Vera-López would have 300 days from that date to file a charge with the EEOC.[8] *See* Ayala v. Shinseki, 780 F.3d 52,

---

[8] Plaintiff references an event that took place around January 30, 2023, in which a prosecutor with the Puerto Rico Department of Justice contacted the FSB and was informed that Mr. Vera-López was suspended. Id. ¶ 43. However, there is no allegation in the *Amended Complaint* that this event was discriminatory or retaliatory. In any case, the *Amended Complaint* also lacks an allegation that administrative remedies were sought, let alone exhausted at any time between August 1, 2019 and the filing of the pleading.

57 (1st Cir. 2015) ("[D]iscrete discriminatory acts will be time-
barred, and thus not actionable, even if they are related to acts
alleged in timely filed charges."). Accordingly, he would have
needed to file by February 19, 2023. Given that Plaintiff does not
allege any such filing, he has failed to exhaust administrative
remedies for any purportedly discriminatory events that occurred
after he first filed administrative charges before the EEOC in
August 2019. *See* Rivera-Santiago v. Abbot Pharm. PR Ltd., 609 F.
Supp. 2d 167, 180 (D.P.R. 2009) (dismissing claims for failure to
exhaust administrative remedies). Additionally, Plaintiff does not
allege that equitable tolling applies.

When a plaintiff has failed to exhaust administrative
remedies, dismissal without prejudice is generally proper. *See*
Lebrón-Ríos, 341 F.3d at 15 (applying outcome to plaintiffs who
still had an opportunity to timely file administrative charges).
However, when the time for filing has long elapsed, as is the case
here, **DISMISSAL WITH PREJUDICE** is the appropriate remedy. Id. at
14 (citations omitted).

ii. Plaintiff's claims that predate August 1, 2019, are
        time-barred

The Court also considers the alleged discrimination that
occurred prior to Plaintiff's August 1, 2019 EEOC complaint. These
include, *inter alia*, the 2017 incident involving Ms. Candelaria

and the February 2019 referral for criminal (Docket No. 18 ¶¶ 21-22(b), 25(a)). Mr. Vera-López also filed a complaint on April 22, 2020 in federal district court, which he voluntarily dismissed without prejudice on April 11, 2022. Id. ¶ 37. However, a dismissal without prejudice operates "as if 'no suit had ever been filed.'" Arana Allende v. Vilsack, 2023 WL 1444784, at *5 (D.P.R. 2023) (citing Chico-Vélez v. Roche Prods., Inc., 971 F. Supp. 56, 60 (D.P.R. 1997)). Because more than 90 days have elapsed since Mr. Vera-López received the right-to-sue letter in January 2020, the instant case is time-barred. See Arana Allende, 2023 WL 144784, at *5. Again, Plaintiff does not aver that equitable tolling applies. Dismissal with prejudice is therefore warranted as to these time-barred claims.

### iii. Plaintiff's retaliation claim is also untimely

A retaliation claim "is one of the narrow exceptions to the normal rule of exhaustion of administrative remedies." Franceschi, 514 F.3d at 86. For example, "retaliation claims are preserved so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency—e.g., the retaliation is for filing the agency complaint itself." Clockedile v. New Hampshire Dep't of Corr., 245 F.3d 1, 6 (1st Cir. 2001). Retaliation claims may accordingly be "bootstrapped" onto other Title VII claims even when they have not been put through the

administrative process. <u>Franceschi</u>, 514 F.3d at 86. However, where administrative remedies have not been exhausted as to any Title VII claims, there is nothing to which the retaliation claim may be attached. <u>Id.</u> Given that Plaintiff did not properly exhaust administrative remedies as to claims made after August 1, 2019, he cannot bootstrap a retaliation claim to those events.

Additionally, any retaliation claim that Defendant alleges in his *Amended Complaint* is also untimely for the same reasons that doom his substantive Title VII claims, as discussed *supra* in Section III.D.iii. In other words, any discrete acts of retaliation that fall outside of the 300-day limitations period—in this case, all the alleged events in the *Amended Complaint*—are now time-barred. *See* <u>Ayala</u>, 780 F.3d at 56-57 (dismissing retaliation claims because "discrete discriminatory acts will be time-barred, and thus not actionable, even if they are related to acts alleged in timely filed charges.").

**E. Due Process Claims**

Plaintiff alleges that Defendants violated the Due Process Clause when they dismissed and suspended him. (Docket No. 18 ¶¶ 49, 51, 52). The Fourteenth Amendment Due Process clause prohibits states—and, as relevant here, the Commonwealth of Puerto Rico—from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Fourteenth Amendment

property interests "may take many forms," including an interest in employment. Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 576 (1972); *see also* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985) (regarding government employees' interest in continued public employment). To establish a prima facie due process violation, a plaintiff must assert: "(1) [he] was deprived of a protected property interest, and (2) the procedures attendant to that deprivation were constitutionally inadequate." Rocket Learning, Inc. v. Rivera-Sanchez, 715 F.3d 1, 11 (1st Cir. 2013) (citations omitted).

Regarding the first element, "public employees have a property interest in their continued employment, not in the functions they perform" pursuant to both First Circuit precedent and Puerto Rico law. Ruiz-Casillas v. Camacho Morales, 415 F.3d 127, 134 (1st Cir. 2005). To determine "those aspects of public employment recognized as property interests," the Court refers to the law of the Commonwealth of Puerto Rico. Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st Cir. 2003) (citations omitted).

The second element requires a plaintiff to "demonstrate that he was deprived of th[e] property interest without the minimum amount of process that was due," which would include "some kind of hearing and some pretermination opportunity to respond." Senra v. Town of Smithfield, 715 F.3d 34, 38-39 (1st Cir. 2013) (internal

quotation marks omitted). The minimum amount of process can simply be that an employee "receive[s] notice of the charges, an explanation of the evidence that supports those charges, and the ability to refute that evidence." Marrero-Gutierrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007) (citing Cepero-Rivera v. Fagundo, 414 F.3d 124, 134 (1st Cir. 2005)).

i.   Plaintiff's Due Process claims regarding his termination are conclusory

Here, Plaintiff first claims that he was terminated by Ms. Menéndez at an unspecified time without cause, and the dismissal was later reversed, again at an unspecified time. (Docket No. 18 ¶¶ 24, 27). Specifically, he alleges Ms. Menéndez "illegally and without any cause, dismissed (terminated/fired) plaintiff from his job at the Forensic Science Bureau." Id. ¶ 24. Undoubtedly, Mr. Vera-López had a property interest in his continued employment, so he has properly stated the first element of a due process claim as to his termination. See Figueroa-Serrano v. Ramos-Alverio, 221 F.3d 1, 6 (1st Cir. 2000) ("Puerto Rico law grants a property interest in employment to career employees").

However, the rest of his claim is conclusory. Plaintiff simply states that he was terminated "without cause," and does not otherwise plead facts that would enable the Court to conclude that he received insufficient process. A plaintiff must make "more than

an unadorned, the-defendant-unlawfully-harmed-me accusation." _Iqbal_, 556 U.S. at 678 (citation omitted); _see also_ Penalbert-Rosa v. Fortuno-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual.") (internal quotation marks omitted). In the case at bar, Mr. Vera-López does not plead any facts about whether the procedures he received were constitutionally inadequate, failing to make out the second element of a prima facie case. Moreover, simply stating that he was terminated without cause is conclusory. _See_ Cardona Román v. Univ. of Puerto Rico, 2012 WL 13170522, at *11 (D.P.R. 2012) (denying Due Process Claim as conclusory where the plaintiff had "failed to allege any adequate process that he was supposedly denied.").

> ### ii. Plaintiff fails to state a claim regarding his suspension

Mr. Vera-López also claims that on April 25, 2022, that he was suspended **with pay**, which he construes as a "constructive dismiss[al]." Id. ¶¶ 40, 42, 52. The _Amended Complaint_ contains no allegation that Plaintiff was terminated again after the paid suspension, but he attached an exhibit to his _Response_ that indicates that he was laid off as of December 13, 2023. (Docket

No. 49-3 at 1-2). While due process is required for termination of
employment of career employees, the same is not true for paid
suspensions. Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 9 (1st
Cir. 2003) (citations omitted). The First Circuit has held multiple
times that a "very temporary deprivation of job functions and no
financial loss" does not merit process prior to suspension. Collins
v. Univ. of New Hampshire, 664 F.3d 8, 17 (1st Cir. 2011) (internal
quotation marks omitted) (quoting Torres-Rosado, 335 F.3d at 10);
see also Bennett v. City of Boston, 869 F.2d 19, 22 (1st Cir. 1989)
(noting a paid suspension did not harm plaintiff). Though the First
Circuit has noted that "very long or open-ended" suspensions with
pay could implicate due process protections, it has yet to directly
address the issue of suspensions in excess of six months. See
Torres-Rosado, 335 F.3d at 10 n.8 (involving five-month
suspension). At least one other court in this district, however,
has concluded "that a government employee does not have a protected
property interest in the nonpecuniary dimensions of employment."
Delgado v. Chardon, 2015 WL 3924369, at *6 (D.P.R. 2015)
(collecting cases and holding that a paid suspension of over two
years did not implicate the Due Process Clause).

     The Court need not conclude that Plaintiff was deprived of a
protected property interest during his paid suspension, however,
because he cannot establish the second element of a prima facie

Due Process Clause violation. As with his termination claim, Mr. Vera-López only alleges that he was suspended "illegally and without any cause." (Docket No. 18 ¶ 40). He then contradicts that statement by pleading that the "alleged cause is *Presunción de Incapacidad* (*Presume Disability*) [*sic*]." Id. (emphasis in original). Thus, Plaintiff's Due Process claim as to his suspension fails for the same reasons that his termination claim does: they are both conclusory as to the second element of a prima facie case, that is, what process was due and denied to him.[9]

Accordingly, the *Motion to Dismiss* is **GRANTED** as to Plaintiff's Due Process claims, but the claims are **DISMISSED WITHOUT PREJUDICE.**

**F. Sections 1983 and 1985 of the Civil Rights Act**

Mr. Vera-López also brings claims pursuant to sections 1983 and 1985 of the Civil Rights Act of 1964, claiming that defendants instigated criminal investigations against him in 2022 after he had testified before the Puerto Rico Department of Justice and the

---

[9] The Court also notes that the exhibit Mr. Vera-López attached to his *Response* strongly suggests that he did receive at least the minimum process required by the Due Process clause. *See* (Docket No. 49-3 at 1) (detailing, *inter alia*, the notification processes and advisement of rights). The First Circuit has indicated that this minimal process may be sufficient: "the Constitution requires only an initial check against erroneous decisions, not that the state follow best practices." Cepero-Rivera, 414 F.3d at 135 (quoting O'Neill v. Baker, 210 F.3d 41, 49 n.10 (1st Cir. 2000)) (internal quotation marks omitted). As discussed in footnote 4, *supra*, the exhibits attached by Plaintiff do not convert the *Motion to Dismiss* into a motion for summary judgment because, *inter alia*, the parties do not contest their authenticity.

Puerto Rico House of Representatives. (Docket No. 18 ¶¶ 26, 28, 38). As mentioned *supra* in Section III.B, Eleventh Amendment bars section 1983 suits for monetary damages against states and individuals acting in their official capacity. *See* <u>Johnson v. Rodriguez</u>, 943 F.2d 104, 108 (1st Cir. 1991); *see also* <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."). The same is true for section 1985 claims. *See* <u>Kifor v. Massachusetts</u>, 2023 WL 4402669, at *1 (1st Cir. 2023). Thus, the only pending claims under sections 1983 and 1985 would be against the individual defendants in their personal capacities.

To state a claim pursuant to section 1983, "a plaintiff must allege (1) the violation of a right protected by the Constitution or the laws of the United States and (2) that the perpetrator of the violation was acting under color of law." <u>Cruz-Erazo v. Rivera-Montanez</u>, 212 F.3d 617, 621 (1st Cir. 2000). Based on the *Amended Complaint*, however, it is unclear what federal right that Mr. Vera-López claims Defendants violated.[10] The paragraphs in the *Amended Complaint* that invoke section 1983 refer to the malicious prosecution claims that Plaintiff conceded he could not establish.

---

[10] The Court has addressed Plaintiff's Due Process Claims *supra*, in section III.E.

*See* (Docket No. 18 ¶¶ 28, 38); *supra* section III.A. The Appearing Defendants consider the section 1983 claims as referring to defamation, which they rightly note arises under state law and generally cannot serve as a basis to maintain a section 1983 action. *See* <u>Paul v. Davis</u>, 424 U.S. 693, 712 (1976) (holding that defamation did not deprive plaintiff of any liberty or property interests protected by the Due Process Clause); <u>Pendleton v. City of Haverhill</u>, 156 F.3d 57, 63 (1st Cir. 1998) (noting that defamation can be a section 1983 predicate when there are impacts beyond mere reputational injury). Plaintiff has not indicated, and the Court cannot discern, any other right that motivates his section 1983 claim.

Plaintiff also briefly refers to 42 U.S.C. § 1985, although he does not specify which subsection he is invoking. *See* (Docket No. 18 ¶ 3). Nor does he clarify the issue in his *Response*. The remainder of the *Amended Complaint* refers at times to Mr. Vera-López' being retaliated against for his testimony before the Puerto Rico Department of Justice and the Puerto Rico House of Representatives. *See* <u>id.</u> ¶¶ 23, 26, 31, 38. Thus, the Court infers that Plaintiff may seek to proceed under the second clause of section 1985(2), which prohibits conspiracies to obstruct

> the due course of justice in any State or
> Territory, with intent to deny to any citizen
> the equal protection of the laws, or to injure

> him or his property for lawfully enforcing, or
> attempting to enforce, the right of any
> person, or class of persons, to the equal
> protection of the laws.

42 U.S.C. § 1985(2). Among other elements, a plaintiff is required
to allege a "class-based, invidiously discriminatory animus" in
order to state a claim under this subsection. Knowlton v. Shaw,
704 F.3d 1, 11 (1st Cir. 2013) (citations omitted); *see also* Bolduc
v. Town of Webster, 629 F. Supp. 2d 132, 150-51 (D. Mass. 2009)
(listing elements of section 1985(2) claim). The First Circuit has
explained that this requirement means that "the complaint must
allege acts showing that the defendants conspired against the
plaintiffs because of their membership in a class and that the
criteria defining the class were invidious." Hahn v. Sargent, 523
F.2d 461, 469 (1st Cir. 1975) (internal quotation marks and
citations omitted). No such allegation is present in the instant
case. Mr. Vera-López does not claim he belongs to any particular
class, and that he was retaliated against for testifying because
of his membership in that class. Accordingly, he has not stated a
claim under section 1985(2). Finally, to the extent that Plaintiff
may have been raising a claim under section 1985(3), which
prohibits conspiracies to interfere with civil rights, that claim
would fail because there is no viable section 1983 claim to which

it may be anchored. *See* <u>Gattineri v. Town of Lynnfield,
Massachusetts</u>, 58 F.4th 512, 516 (1st Cir. 2023).

The *Motion to Dismiss* is therefore **GRANTED** as to the Civil
Rights Act claims.

## G. Supplemental Jurisdiction

First Circuit case law is clear "that district courts may
decline to exercise supplemental jurisdiction over pendent state
law claims when the anchor federal claims for those state law
claims are dismissed." <u>Borrás-Borrero v. Corporación del Fondo del
Seguro del Estado</u>, 958 F.3d 26, 37 (1st Cir. 2020). Where, as here,
the federal claims are dismissed at an early stage of the
proceedings, a District Court is well within its discretion to
decline to exercise supplemental jurisdiction over pending state-
law claims. *See e.g.*, <u>Massó-Torrellas v. Mun. of Toa Alta</u>, 845
F.3d 461, 469-70 (1st Cir. 2017); *see also*, <u>Rivera-Diaz v. Humana
Ins. of Puerto Rico, Inc.</u>, 748 F.3d 387, 392 (1st Cir. 2014)
(quoting <u>Carnegie–Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7,
(1988)) ("[I]n the usual case in which all federal-law claims are
eliminated before trial, the balance of factors [...] will point
toward declining to exercise jurisdiction over the remaining
state-law claims.").

Since the federal claims are being dismissed at the pleading
stage, the Court declines to exercise supplemental jurisdiction

Civil No. 23-1168 (RAM)                                                      31

pursuant to 28 U.S.C. § 1367(c). All Mr. Vera-López' supplemental
claims under Puerto Rico law are hereby **DISMISSED WITHOUT
PREJUDICE.**

### IV.  CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the
Commonwealth of Puerto Rico and the Forensic Science Institute of
Puerto Rico's *Motion to Dismiss Pursuant to Fed. R. Civ. P.
12(b)(6)* at Docket No. 21 is **GRANTED.** Judgment of **DISMISSAL WITH
PREJUDICE** shall be entered accordingly as to the malicious
prosecution, ADA, Title VII, and section 1983 and 1985 claims.
Judgment of **DISMISSAL WITHOUT PREJUDICE** shall be entered as to the
Due Process claims and the supplemental claims under Puerto Rico
law.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of August 2024.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE